The Judges delivered their opinions.
JUDGE TUCKER.
This was an action upon an administration bond against the administrators and their securities for a devastavit, in which it was contended to be necessary to review the decision of this court, in the case of Braxton v. Justices of Spottsylvania Court, 1 Wash. 31.
The declaration (which is alleged to be at the instance of Nathaniel Cartmill) is in the usual form of a declaration on a bond for the payment of money; the defendants (without demanding oyer of the condition of the bond) pleaded jointly conditions performed and plene administravit. If this plea be regarded as the plea of the administrators, it might have been objected to, and ought not to have been received; as the plea of the securities, it was either an absurdity, or implied in the former plea of conditions performed. The plaintiffs, however, without objecting or demurring(b) to the plea, replied that they ought not to be precluded from having their action aforesaid against the said defendants, (at the instance of the said Cartmill,) by any thing in their plea alleged ; because they say, that the defendants, the administrators, did not cause to be made a true and perfect inventory of the goods, &c. of the deceased which came to their hands, and did not exhibit an account of the same to the Court of Frederick, when thereto required ; and did not faithfully administer the said goods and chattels in this; that the administrators aforesaid did not pay the amount of a judgment obtained in the said Court by N. Cartmill aforesaid, plaintiff, against the said defendants, for the sum of 721. &c. in which suit the said administrators pleaded payment and plene 8 administravit; *and because the said administrators have wasted the estate aforesaid; and this they are ready to verify, *14 and pray that the same may be inquired of by the country, and the defendants likewise. The Jury found for the plaintiff the debt in the declaration mentioned, to be 'discharged by the payment of the amount of the judgment in the replication mentioned, “if the Court should be of opinion, that an action on the administration bond aforesaid, can be maintained without' shewing in evidence in such action, a judgment in an action of devastavit against the said administrators, John Kingan,” &c. “otherwise they find for the defendant.” The County Court gave judgment for the defendant. The District Court reversed that judgment, with costs both in the District and County Court; but without adding such judgment as the County Court ought to have rendered. Mr. Munford, for the appellees, on the authority of Mantz v. Hendley,(a) admitted, 'hat this omission was an error in the judgment of the District Court, which this Court might amend. The case of Bibb v. Cauthorne,(b) and what was said by Judge Pendleton, (c) in the case of Cabell v. Hardwicke, are additional authorities in favor of Mr. Munford’s concession; and shew what kind of judgment the Courts ought to pronounce in suits upon executors’ bonds, where the plaintiffs may be entitled to a judgment.
But we are called upon by the counsel for the appellees to review the decision of the Special Court of Appeals in the case of Braxton, Executor of Claiborne, against Winslow and others, Justices of Spottsylvania County, (d) which was an action of debt brought, as in the present case, upon an executor’s bond, against the securities, to subject them to the payment of a bill of exchange. The suit was instituted upon the bond at the instance of the endorser of the bill of exchange against the executor’s securities, without having previously obtained a judgment against the executor upon the bilk of exchange: here the two causes differ; the relator in the pres-9 ent case having, previously to *the commencement of this suit, obtained a judgment (as is suggested in the replication) against the administrators for the sum of 721. to be discharged by the payment of 361. with interest and costs. But, whether this judgment was against them personally, or for a debt of their intestate, or whether they were chargeable by that judgment de bonis propriis, or only de bonis tesiatoris, we are left in the dark by the replication. But this, perhaps, may be aided by the verdict. I shall therefore pass it over for the present. To return then to the case of Braxton v. Winslow.
After oyer of the bond and condition, the defendants (securities) pleaded conditions performed: the replication traverses the plea, and charges a breach in the nonpayment of the bill of exchange, which was protested, of which the executor had notice, but had not paid it; having paid debts of inferior dignity after such notice, and wasted the assets. The defendants rejoined, and by protestation sa3' the executor had not wasted the assets. The Jury found that there was 1,1141. due to the relator upon the bill of exchange, and that the executor had wasted the assets; and judgment was entered for the penalty of the bond, but to be discharged by the payment of 1,1141. as to this breach. From this judgment the defendants appealed.
Two questions were submitted to the Court. The first it is unnecessary to notice; the second was,
“Whether the action could be maintained before a judgment first had by the plaintiff against the representatives of the debtor, and an execution and return of nulla bona. ”
The Court, in the discussion of this question, is reported to have said, “The true question is, has the relator brought himself within the act; or, in other words, does it appear from this record, that he is a party injured within the words and meaning of the act. A man who claims as a creditor, and means to take the benefit of this act, [1748, c. 3,] must shew himself to be a creditor; that the testator left assets; that they came to the hands of the executor; that there was a sufficiency to 10 discharge his demand, or so *much thereof, after pa3ring debts of higher dignity; and that the executor has wasted the assets. Without this concurrence there is no injury done him.” The report proceeds thus:
“An attempt was made at the bar to shew that the paying of debts of an inferior dignity, first, was of itself a devastavit; and that a devastavit for ever so trifling a sum, renders the executor liable for the whole demand, although assets to the twentieth part never came to his hands. But neither reason nor authority warrant this doctrine; for, surely, if there be a sufficiency of assets, it is of no consequence in what order they are paid. But the person who means to make use of this act must shew himself to be a creditor in the usual course of law. It is not enough to produce a mere document of a debt; he must first institute a suit against the executor or administrator, because it is, in the first instance, a dispute between creditor and debtor, whether or no a debt actually exists; a dispute, which the securities to such a bond (who are strangers to the contract) are by no means competent to manage. It is a principle of universal law, that both parties shall be heard. Bet us put this case: suppose A. binds himself in a bond to B. to pay him whatever sum C. owes him, (B.) ; now, before a forfeiture is incurred by A., must not B. first prove the sum that C. actually owes him? Mr. Waller, (the relator,) therefore, ought to have shewn, by an action against the executor, that he was a creditor. ’ ’
Thus far the relator in the present case (if the breach be sufficiently assigned in the replication) may be said to have proceeded. He has alleged that he has obtained a judgment against the administrators; and I will suppose it to be for a debt due from their intestate.
The Court proceeds thus. ‘ ‘He (the relator) ought to have shewn by his action *15 against Moore, the executor, that he had committed a devastavit; a suggestion of a devastavit may be likened to a criminal prosecution, and an executor shall not be presumed guilty of a devastavit till it is found against him by a verdict.”
*Here then we are brought to the inquiry, by what course of proceeding this fact may be found against an executor by a verdict.
Anciently, if the Sheriff returned nulla bona, and also a devastavit to a fieri facias de bonis testatoris sued out on a judgment obtained against an executor, it was sometimes the practice to sue out a capias ad satisfaciendum against the executor; or a fieri facias de bonis propriis. But the better and more frequent method was, to sue out a scire facias, and obtain an award of execution before issuing the fieri facias de bonis propriis. But the most usual practice upon the Sheriff’s return of nulla bona to a fieri facias de bonis testatoris, was to sue out a special writ of fieri facias de bonis testatoris, with a clause therein, et si tibi constare poterit, that the executor had wasted the goods, then to levy de bonis propriis. And this we are told continued to be the practice of the King’s Bench until the time of Charles X. ; but “in the Common Pleas a practice had prevailed in early times upon a suggestion in the special writ of fieri facias of a devastavit by the executor, to direct the Sheriff to inquire by a Jury whether the executor had wasted the goods, and if the Jury found he had, then a scire facias was sued out against him; and, unless he made a good defence thereto, execution was awarded de bonis propriis, which practice was, about the time of Charles 1. recommended by the Court of King’s Bench to be adopted in that Court likewise. It afterwards became the practice of both courts, for the sake of expedition, to incorporate the fieri facias inquiry, and scire facias into one writ, thence called a scire fieri inquiry. This writ recites the fieri facias de bonis testatoris sued out on the judgment against the executor, the return of nulla bona by the Sheriff, and then suggesting that the executor had sold and converted the goods of the testator to the value of the debt and damages recovered, commands the -sheriff to levy the said debt and damages of the goods of the testator, in the hands of the executor, if they could be levied thereof; but, if it should appear to him, by the inquisition of a 12 *Jury, that the executor had wasted the goods of the testator, then the Sheriff is to warn the executor to appear, &c.(a) And if the Sheriff omits to give notice to the defendant of the time the writ is to be executed, the inquisition may be set aside for that cause, (b) And this practice, we are told, is still frequently adopted in England; but in this country no case of the kind has occurred within my own experience. But the most usual mode of proceeding, even in England, is by action of debt upon the judgment, suggesting a devastavit, which, we are told, was substituted in lieu of the proceeding by scire fieri inquiry, (c) The foundation of this action is a judgment obtained against the executor. A judgment against an executor or administrator, whether by default, (that is, by neglect after an appearance, for in England no judgment can be in a personal action without appearance,) (d) or upon demurrer, or upon a verdict on any plea, pleaded by the executor, except plene administravit, or admitting assets to such a sum, et rien ultra, is, in England, (and perhaps in this country before the act of 1806, c. 21,) conclusive upon him that he has assets to satisfy such judgment. But our act of 1792, c. 92, s. 33, (e) declares, that no security for any executor or administrator shall be chargeable beyond the assets of the testator or intestate, by reason of any omission or mistake in pleading, or false pleading, of such executor or administrator. The effect of this provision, as it relates to the securities, I shall consider hereafter. Indeed, if the executor or administrator plead either a general or special plene administravit, it is now held, that he is only liable to the amount of the assets proved to be in his hands;(f) though the case was formerly taken to be, that if any assets, howeversmall, were proved to be unadministered, the plaintiff was entitled to recover his whole demand from the executor: so that now a judgment against an executor on a verdict upon plene administravit, is only an admission of assets to the extent of assets which ma3r be proved to be in his hands. If, tnerefore, upon a fieri 13 facias de bonis testatoris, *on a judgment obtained against an executor by either of the ways above mentioned, either no goods can be found, which were the testator’s, or not sufficient to satisfy the demand ; or, (which is the same thing,) it the executor will not expose them to the execution, that is evidence of a devastavit. And the English authorities in general seem to consider it as conclusive; but Serjeant Williams, in his note on the case of Hancock v. Proud, (g) says, that to a scire facias on a judgment, or action of debt suggesting a devastavit, the defendant cannot plead plene administravit, but only controvert the devastavit; of which fact the judgment and Sheriff’s return of nulla bona testatoris, are almost conclusive evidence; and the judgment will be against the defendant de bonis propriis. The mode of proceeding is immaterial, it is said, because the executor is entitled to the same defence in an action of debt upon the judgment suggesting a devastavit, as in the proceeding by scire fieri inquiry. The usual course in an action of debt is, first, to sue out a fieri facias upon the judgment obtained against the executor, and, upon the Sheriff’s return of nulla bona, to bring the action, and state in the declaration, the judgment, the writ, and return; and, on the trial, to give in evidence the judgment, the fieri facias, and the return, to prove the case. There are certain rules equally applicable to the proceeding by *16 scire fieri inquiry, aud to the action of debt on a devastavit; 1st. The return of a devastavit by the Sheriff, on the execution issued upon the first judgment against the executor, is not conclusive, and therefore the executor may traverse the devastavit, whether it be found by the inquisition, or returned by the Sheriff. The form of the traverse is indeed different. In the scire fieri inquiry, the executor precisely and expressly denies the devastavit found by the inquisition, and takes issue upon it. (a) But, in an action of debt', the whole may be given in evidence on nil debet, (b) or on not guilty, (c)
2dly. The executor cannot, in either case, plead plene administravit, or any other plea of the same nature, which 14 *puts his defence upon want of assets, unless the first judgment were of assets in futuro, or the declaration in the second action should suggest a devastavit of assets which had accrued after the judgment declared upon; in both which cases, such pleas have been held admissible, (d) The reason is, that such plea (except in the cases just mentioned) would be contrary to what is admitted by the judgment in the first action. And, if the truth were, that the executor had no assets, he should have set it up as a defence to the original action, which having neglected to do, he shall not be permitted to say so afterwards. For it is a general rule, that if a party do not avail himself of the opportunity of pleading matter in bar to the original action, he cannot afterwards plead it, either in another action founded on it, or in a scire facias. And, if he did plead plene administravit to the original action, and the judgment was had upon a verdict, finding that he had assets sufficient to satisfy the debt, he is of course equally concluded from saying that he had no assets. But, if the verdict in the original action do not find, upon the plea of plene administravit, that there are assets sufficient to pay the debt, or if it do not find the value of the goods in the hands of the defendant, if not sufficient to satisfy the plaintiff’s demand, as such a verdict would be uncertain and insufficient upon the issue joined, the judgment founded upon it may be reversed for error, (e) And for the same reason that the executor cannot plead the want of assets, (except in the cases above mentioned,) he cannot give in evidence the want of assets on the trial of the devastavit, either in the scire, fieri inquiry, or in the action on the devastavit; nor even upon a writ of inquiry after judgment by default in the original action, according to the practice in England. See 1 Saund. 219, n. 8, Wheatly v. Lane, in which the editor, Serjeant Williams, has given a most copious and satisfactory view of this subject.
Such appears to be the modern course of proceeding against an executor in 15 England, in order to charge him *personatly for a devastavit, and such the course by which he may defend himself against the charge; and, in my opinion, they will justify what is reported to have been said by the Court, 1 Wash. 33, “an executor shall not be presumed guilty of a devastavit till it is found, against him by a verdict.” The action of debt upon the first judgment, is the clearest, simplest, and must unexceptionable course of proceeding, because the declaration, in such an action, must set forth the whole of the plaintiff’s case, and give the executor notice of the particular charge against him. Whereas, in an action of debt upon the executor’s bond, the ordinary practice here seems to be, to declare upon the bond, as upon a bond for the payment of money, without setting forth the condition, or alleging any particular breach thereof; leaving it to the defendant whether the executor himself, or his representatives if he be dead, or the security if joined with him in the action, or sued alone, (as was done in the case of Taylor v. Street,) to guess at the breaches which may be afterwards assigned in the replication as in the case now before us. There is too much room for surprise in such a course of proceeding, which can hardly be practised" in an action of debt brought upon the judgment, and suggesting a devastavit; a circumstance of itself sufficient in my eyes to give the preference to the latter action. But our act of 1792, c. 92, s. 33, (f) affords a stronger reason (one indeed that is conclusive to my mind) why this course of proceeding which I recommend must be adopted in all cases arising upon any executor’s or administrator’s bond executed since the commencement of that act, which expressly declares, “that no security for any executor or administrator shall be chargeable beyond the assets of the testator or intestate, by reason of any omission or mistake in pleading, or false pleading, of such executor or administrator.” Put the case, that an executor, who has never received more than $100 of his testator’s estate, shall, by his own inattention or mismanagement, or that of his counsel or attorneys, have made himself person-16 ally *liable to satisfy judgments-against him for demands against his testator for $10,000. Can the securities be charged for more than the $100, if that were, in truth, the whole of the assets? Certainly not. Is it not then incumbent on the creditor, when he brings an action against the securities, to shew that assets sufficient to discharge his debt have come to the hands of the executor, and that he has wasted them? Certainly it is; nor will it be sufficient to shew that the executor either by his neglect, or false pleading, has made-himself liable for the debt personally, without shewing that he actually had assets sufficient to pay the debt, or a part thereof.
It may be asked, perhaps, how is a creditor to ascertain the amount of the assets. which have come to the hands of an executor? The law, I conceive, has sufficiently pointed out the method; it requires the executor to give bond, with condition, “to- *17 make a true and perfect inventory of all the goods, chattels, and credits of the deceased, which have, or shall come to the hands, possession, or knowledge of the executor, or into the hands and possession of any other person, for him, and the same so made to exhibit into the Court granting the probate, (or letters of administration, as the case may be,) at such time as he shall be thereunto required by the Court, (a) His oath also binds him to make a true and perfect inventory, and also a just account when thereto required, (b) If an executor should unreasonably delay to make and return an inventory, any creditor or other person interested in the estate might, by application to the Court, procure him to be summoned to return an inventory. By this course, which is conformable to the practice in England, (c) the amount of the assets may be ascertained, and by the same course the account of his executorship, which is also to be exhibited when thereto required by the Court, may likewise be obtained. And surely this course is infinitely more likely to attain the great ends of justice, than to trust to a common Jury to adjust and settle a complicated account of an executor’s or administrator’s 17 ^transactions, in a contest between a creditor and the security for the executor or administrator. Or should a resort to a Court of Equity be found necessary for a discovery of assets, which maj' be concealed by the executor, or may have gotten into the hands of legatees, or others, with the assent or connivance of the executor or administrator, that Court might direct an account, as was done in this Court in the case of Taliaferro & Gaines v. Thornton & Wife, (d) against all parties, however remotely concerned in interest; the same course I perceive to have been intimated by Judge Pendleton, in the case of Burnley v. Lambert, (e) and White, Whittle & Co. v. Banister’s Executors, (f) which I shall notice hereafter; and to have been pursued by the present Chancellor of the Richmond District, in that of Clarke v. Webb and others, (g)
To return to the case of Braxton v. The Spottsylvania Justices. The Court proceeds to say: “It may be objected that the act does not prescribe that a creditor shall not go against the securities in the first instance; and, therefore, that the action was well brought; to which this answer presents itself, that it is an established principle of construction, that where a statute has given a new remedy, without pointing out the mode in which this remedy is to be attained, the rules of the common law, and the practice of the Courts, founded upon the reason of the thing, shall be pursued. ’ ’ I subscribe most fully to this, as to every preceding part of the opinion, which is reported to have been unanimously given in that important case.
Those who object to the delay which such a course of proceeding must require, would do well to consider that this is an additional remedy given by our law against executors;, who, neither by the common law, nor by any statute in England, can be compelled to give bond and security for their conduct. And the creditor was, by the common law, as much without a remedy against the 18 ordinary, (who was ^’originally in the place of an administrator,) as he now' is against an executor in England, under any statute of that country. For the ordinary, at common law, might have disposed of the whole of the intestate’s personal chattels, and could not be compelled to grant administration, nor was even so much as obliged to pay debts; but several statutes being made by which power was given to him to grant the administration, and to pay the debts, he therefore obliged the administrator to bring in an inventory, and to see that it was distributed in payment of debts; and, finally, the statutes required (as our law does) that the administrator should give bond for the faithful performance of his duty. But the last statute upon the subject, 22 and 23 Car. II, c. 5, was never in force in this country; so that the remedy given by otlr acts of assembly is not, as was contended by Mr. Munford, a substitute for the action of debt upon a judgment against an executor suggesting a devastavit ; but, as was said by the Court in the case of Braxton v. The Spottsylvania Justices, an additional remedy which our law has given to creditors, legatees, and distributees of persons deceased, for their benefit and security. Have they then a right to complain that they shall not be permitted to avail themselves of this additional remedy against an innocent security, until they shall shew the nature and amount of their claims; that the testator left assets to a certain amount; that they came to the hands of the executors, who have wasted them; and that there was sufficient thereof to have satisfied their demands in a due course of administration?
The only case that I have met with in the English books of an action at law brought upon an administration bond against the securities of the administrator, is that mentioned in the case of Greenside v. Benson, 3 Atk. 248. There the creditor, Benson, had brought an action against the administratrix on a bond of her husband, the intestate, for 3001. to which she pleaded that she had not assets ultra 541., which she paid into Court. 19 Benson, not being satisfied *with the inventory brought in by her, procured an assignment of the administration bond, and put it in suit, by bringing three several actions, one against the administratrix, and one against each of the securities; and assigned for breach that she had not exhibited a true and perfect inventory.
These causes came on to be tried, and no defence was male by the two securities, and there was judgment for the plaintiff by default.
The securities brought a bill against Benson, the creditor, and Mrs. Hudson, the administratrix; and the relief prayed was, that the defendant, the administratrix, might indemnify the plaintiffs for being *18 sureties in the administration bond, and for an injunction against Benson, the creditor, till an account should be taken between them and Mrs. Hudson, and till she should have satisfied Mr. Benson, as far as the assets would go.
The counsel for the defendant, Benson, further stated, that the administratrix pleaded to the defendant’s action, that she had assets only amounting to 551. beyond what she had already paid, but the Jury found 2261. beyond the 551., so that the creditor became entitled to both sums.
Lord Ch. Hardwicke said, the administratrix could not then dispute the verdict which had been found against her; nor was the case of the sureties at all better, as the verdict was obtained against the administratrix, who was the proper person to try it; that he did not think it proper to have the whole account taken over again, or to alter what had been found by the verdict, and directed an account to be taken only of what was exhibited upon the inventory, and the verdict to stand as a security for so much as that should fall short to satisfy the defendant’s principal and interest on his bond.
If the law of England had been conformable to our act of 1792, c. 92, s. 33, (a) the latter part of this decree must have been changed; for-, undoubtedly, the securities in that case could only have been made chargeable to the amount of the assets found by the verdict.
*But my principal object in citing this case was to shew, that in England they think it necessary to proceed separately against the administrator, and shew the amount of the assets which have come to his hands before they sue the sureties, instead of bringing a joint action against them all, before they have established either the amount of the assets, or the liability of the administrator, as the plaintiffs have done in this suit; and further to shew that that part of the decree, which declares that the verdict against the administratrix should stand as a security only for so much as the inventory might fall short of the payment of the creditor’s debt, is according to the spirit of the decision in Braxton v. The Spottsylvania Justices; that the creditor must pursue the estate of the deceased until it is exhausted, before any suit can be brought against a security upon the administration bond.
In the case of White, Whittle & Co. v. Banister’s Executors, (b) Judge Pendleton, in delivering the opinion of the Court, said, “A creditor may, at law, either sue out execution upon a judgment obtained against the executors, and levy it on the visible property of the testator, if any; or, if none be found, 2dly. He may proceed against the executor's, as for a devastavit, on account of a misapplication of assets; or, 3dly. A creditor may not know the state of the assets, the amount, nor the claims against the estate; he may therefore file his bill in equity to have a discovery of those matters, and on that discovery being made, may either proceed at law,” (that is to say, upon the executor’s bond, as I understand him,) “or that Court may retain the cause,” (as was done in this Court in the case of Taliaferro & Gaines v. Thornton & Wife, before mentioned,) “and determine the disputes between the parties.” This seems to me to be perfectly in conformity to the principles which were supposed to have been settled in the case of Braxton v. The Spottsylvania Justices.
Upon these grounds, I am of opinion, that the opinion of the County Court in favour of the defendant upon the 21 *point reserved, was correct; and, therefore, that the judgment of the District Court reversing that judgment ought to be reversed, and that of the County Court affirmed.
JUDGE FLEMING.
This case has been so fully stated and investigated by Judge Tucker, that it is unnecessary for me to add any thing farther than to observe, that it seems now a settled principle, that a creditor of a deceased person cannot charge, or have recourse against the securities in an executor’s or administration bond, until he has pursued the estate of the testator, or intestate, to the utmost extent of the law, and proved, by the verdict of a Jury, a devastavit on the executor or administrator, as the case may be, and then no farther than assets shall appear to have come into his hands; I therefore concur in the opinion, that the judgment of the District Court be reversed, and that of the County Court affirmed.
By both the Judges, (JUDGE ROANE not sitting in the cause, on account of his being interested in a suit which involved the same point,) the judgment of the District Court reversed, and that of the County Court affirmed.

 See 3 East, 5.

 2 Hen. & Munf. 318.

 1 Wash. 91.

 1 Call, 359.

 1 Wash. 31.

 See Lilly’s Ent. 661-660.

 2 Lord Raym. 1382. Steed v. Layner; 1 Stra. 628, S. C.

 2 Lord Raym. 971.

 1 Lord Raym. 590, 3 Black. Com. 316.

 1 Rev. Code, p. 165.

 2 Wash. 302, Booth v. Armstrong.

 1 Saund. 236.

 See 1 Saund. 306; Lilly’s Ent. 666, 667; 2 Saund. 402.

 1 Saund. 219; 2 Lord Raym. 1502.

 1 Salk. 314; 2 Lord Raym. 1503; 1 Term Rep. 462.

 See 6 T. R. 1, Mara v. Quin, and 2 Wash. 187, Ruffin v. Pendleton; Bull. N. P. 169, Taylor v. Holman & Robins.

 2 Wash. 302, Booth v. Armstrong.

 1 Rev. Code, p. 165.

 1 Rev. Code, p. 163.

 Ibid. p. 168.

 See Nelson’s Lex Testamentaria, p, 355; Sir T. Raym. Rep. 470; 6 Term Rep. 6, Mara v. Quin.

 May 5, 1806, MS.

 1 Wash. 813.

 Ibid. 168.

 3 Hen. & Munf. 8, 9.

 This act was first passed in 1785, c. 61, and had its commencement January 1, 1787.

 1 Wash. 168.